**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KAREN J. TUORTO,

    Plaintiff,

v.

JOANNE L. HARENBERG, et al.,

    Defendants.

Civil Action No. 18-12179 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court upon Motions to Dismiss (ECF Nos. 7, 17) filed by Defendant American Water Works Company, Inc. ("AWWC") and Defendant Joanne Harenberg ("Joanne").[1] Plaintiff Karen J. Tuorto ("Karen") opposed both motions (ECF Nos. 15, 19), and AWWC replied to Karen's opposition (ECF No. 20). The Court has carefully considered the parties' arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants AWWC's motion and declines to exercise supplemental jurisdiction over the remaining claim.

**I.    BACKGROUND**[2]

    In February 1980, Joanne and Paul R. Harenberg ("Paul") married. (Compl. ¶ 12, ECF No. 1.) In February 1981, Jillian Harenberg ("Jillian"), the daughter of Paul and Joanne, was born.

---

[1] Because multiple individuals share the same last name, the Court refers to the parties by their first names.

[2] For the purpose of considering the instant motions, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

(*Id.* at ¶ 8.) In March 1984, Joanne and Paul separated, and Joanne moved out of the home into a separate residence. (*Id.* ¶ 13.) At some point in time between March 1984 and January 1986, Paul and Karen began living together. (*Id.* ¶ 14.) In January 1986, Paul M. Harenberg ("Paul M.") was born. (*Id.*) In August 1991, Julia Harenberg ("Julia") was born. (*Id.* ¶ 19.) Paul and Karen raised Jillian, Paul M., and Julia. (*Id.* ¶ 21.)

On June 24, 1987, Paul and Joanne executed a separation agreement (the "Separation Agreement"). (*Id.* ¶ 15.) The Separation Agreement was prepared and witnessed by Frederick A. Bojum, Esq. (*Id.* ¶ 16.) The Separation Agreement provides that Joanne and Paul "agree[] to release the other from any right, title, and interest to or in any present or future pension rights to which the other party is or may become entitled through his or her employment." (AWWC's Moving Br., Ex. A at 10 ("Separation Agreement"), ECF No. 7-4.)

Paul was employed by AWWC from 1983 through his death on November 20, 2015. (Compl. ¶ 8.) AWWC is the host of two benefit plans Paul participated in: (1) the Pension Plan for Employees of American Water Works Company, Inc. and its Designated Subsidiaries (the "Pension Plan") and (2) the Savings Plans for Employees of American Water Works Company, Inc. and its Designated Subsidiaries (the "Savings Plan") (collectively, the "Plans"). (*Id.*) In January 2006, Paul named Karen the beneficiary of the Savings Plan, and in May 2011, Paul named Karen the beneficiary of the Pension Plan. (*Id.* ¶ 23.)

Paul completed three Beneficiary Designation forms to designate Karen as the beneficiary of the Savings Plan and Pension Plan.[3] (*See* Ex. C. ("Designation Forms"), ECF No. 15-3.) Each form contains a section for a spouse's signature and this section is unsigned on each form. (*Id.*) Two of the forms contain a notice that reads: "The following Affidavit must be completed if you

---

[3] The Court notes that the dates of Paul's signature on each form is illegible and it is unclear why three forms were completed.

are married and have named someone in addition to or other than your spouse as Primary Beneficiary." (*Id.*) One form contains a notice that reads, "If you are married, and you select a beneficiary other than your spouse, your spouse will be required to sign below consenting to you having another beneficiary, which then terminates their rights to your benefits under this plan. This form must then be notarized." (*Id.*)

In January 2016, Karen began to receive the benefits from the Pension Plan, and the Savings Plan was transferred to her. (Compl. ¶ 26.) In May 2017, Joanne amended Paul's death certificate to indicate that she was his wife at the time of Paul's death. (*Id.* ¶ 28.) Paul's death certificate was amended as a result of an order issued by the Superior Court of New Jersey, Law Division, Civil Part, Hunterdon County in a matter with docket number HNT-L-161-17. (Ex. B, ECF No. 15-2.) Joanne appeared as a sworn witness during an Order to Show Cause Hearing and represented to the Honorable Michael F. O'Neill, J.S.C., that the purpose of amending Paul's death certificate, other than to correct the record, was "Social Security issues" and "[n]ot a life insurance policy." (*Id.* at 6:2-15.) At the conclusion of the hearing, Joanne inquired whether Karen would be informed of the amendment to Paul's death certificate to remove Karen as his spouse and have herself added as the spouse. (*Id.* at 18:1-19.) Joanne indicated that she preferred that Karen not be informed of the change. (*Id.* at 20:2-3.)

In July 2017, Karen received a letter from AWWC indicating that the benefits from the Plans were suspended pending further notice. (Compl. ¶ 27.) In August 2017, AWWC sent Karen correspondence informing her that because she was "not the surviving spouse" she was not entitled to the benefits of the Savings Plan and Pension Plan. (*Id.* ¶ 29.) Karen appealed AWWC's decision and provided AWWC with a copy of the Separation Agreement. (*Id.* ¶ 30.) AWWC represented that it would notify Karen of the result of the appeal by October 2017, but AWWC did not notify

3

Karen of the results of the appeal. (*Id.* ¶¶ 31-34.) In May 2018, Karen contacted AWWC and was informed that her appeal was closed. (*Id.* ¶ 34.)

On July 30, 2018, Karen initiated the instant matter against AWWC and Joanne. Karen's four-count Complaint asserts claims pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001 *et seq.* ("ERISA"). (*Id.* ¶ 3 (stating, "Plaintiff's complaint includes claims which are completely preempted by or are expressly raised under ERISA and this Court has federal question jurisdiction under 28 U.S.C. § 1331.").) Count One alleges that AWWC breached the terms of the Pension Plan by distributing the proceeds of the Pension Plan to Joanne. (*Id.* ¶¶ 37, 39.) Count Two alleges that AWWC breached the terms of the Savings Plan by transferring the proceeds of the Savings Plan to Joanne. (*Id.* ¶¶ 41-45.) Count Three alleges Joanne breached the Separation Agreement by accepting the proceeds of the Plans. (*Id.* ¶¶ 46-49.) Count Four is against unknown individuals and entities for unspecified damages. (*Id.* ¶¶ 50-51.)

On September 6, 2018, AWWC moved to dismiss Counts One and Two pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (AWWC's Mot. to Dismiss, ECF No. 7.) On October 15, 2018, Karen opposed AWWC's motion. (Pl.'s Opp'n Br. to AWWC's Motion, ECF No. 15.) On October 23, 2018, Joanne moved pursuant to Rule 12(b)(6) to dismiss Karen's Complaint. (Joanne's Mot. to Dismiss, ECF No. 17.) On October 29, 2018, Karen opposed Joanne's motion. (Pl.'s Opp'n Br. to Joanne's Mot. ("Opp'n to Joanne's Mot."), ECF No. 19.) On October 29, 2018, AWWC replied to Karen's opposition. (AWWC's Reply Br., ECF No. 20.)

## II. LEGAL STANDARD

A district court is to conduct a three-part analysis when considering a Rule 12(b)(6) motion to dismiss. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[ ] the complaint to strike conclusory

allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff . . . ." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a motion pursuant to Rule 12(b)(6), the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

A district court ruling on a motion to dismiss is generally "not permitted to go beyond the facts alleged in the [c]omplaint and the documents on which the claims made therein were based." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424-25 (3d Cir. 1997). There is an exception to this general rule, and the court may consider "a document integral to or explicitly relied upon in the complaint." *Id.* at 1426 (internal citations, quotations, and emphasis omitted). Thus, if a defendant submits an undisputedly authentic document as an attachment to a motion to dismiss and the plaintiff's claims are based on the document, the district court may consider the document. *See In re Donald J. Trump Casino Sec. Litig.–Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993); *Ramos v. Wells Fargo Bank, N.A.*, No. 16-880, 2016 WL 6434423, at *4 (D.N.J. Oct. 31, 2016). The court may also consider "items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation omitted).

## III. DISCUSSION

"ERISA requires administrators to manage plans 'in accordance with the documents and instruments governing the plan.'" *Robins v. Geisel*, 666 F. Supp. 2d 463, 467 (D.N.J. 2009) (quoting 29 U.S.C. § 1104(a)(1)(D)). Section 502(a)(1)(B) of ERISA states that a "civil action may be brought . . . by a participant[4] or beneficiary[5] . . . to recover benefits due to him [or her] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Accordingly, "[a] plaintiff seeking to recover under section 502(a)(1)(B) must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006).

### A. **AWWC's Motion to Dismiss is Granted**

Karen alleges that the Plans are governed by ERISA. (*See* Compl. ¶ 2 (stating that Karen challenges AWWC's "failure . . . to pay appropriate amounts pursuant to employee pension and savings plans governed by [ERISA].").) Karen also asserts that the "complaint includes claims which are completely preempted by or are expressly raised under ERISA . . . ." (*Id.* ¶ 3.) AWWC agrees with these assertions, in part, but construes Karen's claims as breach of contract claims. (*See* AWWC's Moving Br. 8 (stating "the breach of contract claims arise from alleged breach of the two ERISA pension plans and are expressly preempted.").) Karen's opposition brief clarifies that Counts One and Two are not breach of contract claims and makes clear that they are brought

---

[4] ERISA defines a "participant," in relevant part, as "any employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).

[5] ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

6

pursuant to ERISA Section 502(a)(1)(b). (Opp'n to AWWC 8.) Given this clarification, AWWC's first argument that Counts One and Two are preempted by ERISA is unavailing and does not satisfy AWWC's burden of establishing that no claim is presented.

AWWC's second argument in support of dismissal of Counts One and Two is that Karen is "not entitled to benefits under ERISA or the terms of the Plans." (AWWC's Moving Br. 8.) AWWC states that Section 1055(c)(2)(A) of ERISA ("Section 1055") provides that a plan participant may designate someone other than their spouse as the beneficiary of the plan if (i) the spouse consents in writing, and (ii) "the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public . . . ." (*Id.* at 10 (quoting 29 U.S.C. § 1055(c)(2)(A)).) AWWC argues that the Separation Agreement is not a valid consent by Joanne to the designation of Karen as the recipient of the benefits because the Separation Agreement (i) "does not specify [Karen] as the new beneficiary to receive the benefits" of the plans and (ii) "it is not notarized by a *notary public*." (*Id.* at 11-12 (emphasis in original).) AWWC cites *Hagwood v. Newton*, 282 F.3d 285, 290 (4th Cir. 2002), for the proposition that ERISA's formalities must be "strictly enforced". (*Id.* at 12.) AWWC cites *Lasche v. George W. Lasche Basic Profit Sharing Plan*, 111 F.3d 863, 866-67 (11th Cir. 1997), for the proposition that "a waiver that is not notarized by a notary public or witnessed by a plan representative is invalid under ERISA." (*Id.* at 12-13)

Karen opposes AWWC's arguments on several fronts. (*See generally* Pl.'s Opp'n Br., ECF No. 15.) First, Karen argues that the requirements of Section 1055 are fulfilled because by signing the Separation Agreement Joanne "consent[ed] in writing to waive any right or claim to any pension benefit." (*Id.* at 8.) Karen further argues that the second requirement of Section 1055 is fulfilled because the Separation Agreement was witnessed by a New Jersey attorney and "New Jersey attorneys are notary publics." (*Id.*) Second, Karen argues that the Plans' "terms require valid written consent/waiver by a spouse with such consent having been witnessed by a notary

7

public or plan representative[,]" and these requirements have been satisfied. (*Id.* at 9.) Third, Karen argues that *Hagwood* is inapposite because in *Hagwood* the court had to determine the impact of "a prenuptial agreement intended to address rights *during* the marriage," and here the document is "a separation agreement, intending to eliminate *future* rights between the parties." (*Id.* at 10.) Karen argues that the discussion of the parties' intent in *Hagwood* supports a finding that the Separation Agreement, in the instant matter, is a sufficient waiver. (*Id.* at 11.)

Karen cites three cases for the proposition that courts have upheld a plan participant's waiver of rights to pension benefits in a divorce agreement even when the plan participant subsequently neglected to remove the ex-spouse as a beneficiary.[6] (*Id.* at 12.) Next, Karen cites *Butler v. Encyclopedia Brittanica*, 41 F.3d 285 (7th Cir. 1994), for the proposition that even when Section 1055 is not precisely followed, Congress's intent to ensure the spouse's participation in the waiver decision is satisfied by the waiver being witnessed by an attorney. (*Id.* at 14.) Karen's final argument is that awarding Joanne the benefits would lead to the absurd result of Joanne receiving benefits she released decades earlier. (*Id.* at 15.)

Here, the Court is guided by the Supreme Court's instruction in *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, 555 U.S. 285 (2009). In *Kennedy*, the Supreme Court considered whether certain ERISA provisions[7] "invalidated the act of a divorced spouse [—the plaintiff—], the designated beneficiary under her ex-husband's ERISA pension plan, who purported to waive her entitlement" to benefits from the same pension plan. *Id.* at 288. The

---

[6] Karen cites *Fox Valley & Vicinity Const. Workers Pension Fund v. Brown*, 897 F.2d 275, 277 (7th Cir. 1990), *abrogated by Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009); *Clift v. Clift*, 210 F.3d 268 (5th Cir. 2000); and *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321 (5th Cir. 1994), *abrogated by Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, (2009).

[7] The provisions at issue in *Kennedy* limit the assignment and alienation of benefits and create an exception for qualified domestic relation orders, and are not at issue here.

plaintiff attempted to waive her entitlement to the benefits of the pension plan through a divorce decree in which she was divested of all right, title, interest, and claim in the pension plan. *Id.* After holding that the plaintiff's waiver did not violate certain provisions of ERISA, the *Kennedy* Court addressed whether the plan administrator was required to honor the plaintiff's waiver. *Id.* at 297-304. The *Kennedy* Court held that the plan administrator satisfied its statutory duty of acting "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Title I] and [Title IV] of [ERISA]" by "paying the benefits to [the divorced spouse] in conformity with the plan documents." *Id.* at 300.

The *Kennedy* Court observed that the plaintiff's claim "stands or falls by 'the terms of the plan,'" and that Section 502(a)(1)(B) provides "a straightforward rule of hewing to the directives of the plan documents that lets employers 'establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits.'" *Id.* (quoting 29 U.S.C. § 1132(a)(1)(B) and *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)).

> The point is that giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: "simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules."

*Id.* at 301 (quoting *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (7th Cir. 1990) (Easterbrook, J., dissenting)). The *Kennedy* Court rejected "less certain rules" because "[p]lan administrators would be forced 'to examine a multitude of external documents that might purport to affect the dispensation of benefits,' . . . and be drawn into litigation like this over the meaning and enforceability of purported waivers." *Id.* at 301 (quoting *Altobelli v. IBM Corp.*, 77 F.3d 78, 82-83 (4th Cir. 1996) (Wilkinson, C. J., dissenting)). Thus, "if a waiver of . . . benefits facially conforms to the requirements set forth in 29 U.S.C. § 1055(c)(2), it is generally

9

unimpeachable." *Canestri v. NYSA-ILA Pension Tr. Fund & Plan*, No. 07-1603, 2010 WL 4291489, at *8 (D.N.J. Oct. 22, 2010). On the other hand, waivers that do not comply with the requirements of Section 1055 are ineffective waivers of rights. *See Robins v. Geisel*, 666 F. Supp. 2d 463, 467-68 (D.N.J. 2009).

In the instant matter, Count One and Count Two stand or fall by the terms of the Plans, and the Court finds that those terms preclude Karen from bringing these claims against AWWC. Karen states that Section 1.10 of the Savings Plan provides that: "A married Participant may designate a Beneficiary other than his spouse, provided that such spouse consents to such designation in writing."[8] (Compl. ¶ 43.) She also states that the Pension Plan provides that benefits payable under the Pension are "payable to a Beneficiary only if [Paul] has no Spouse, unless a valid spousal waiver has been obtained." (*Id.* ¶ 38.) The Pension Plan also provides that if Paul "designate[d] a contingent annuitant or Beneficiary other than his Spouse and his Spouse does not consent to such designation in writing witnessed by a public notary . . . then [Paul's] Spouse shall be [Paul's] sole Beneficiary." (*Id.*)

The Beneficiary Designation forms Paul completed are not valid waivers because Joanne did not sign the forms as required by the language of the Plans, the forms themselves, and Section 1055. (*See generally* Designation Forms.) Karen, accordingly, must rely on the Separation Agreement as a valid spousal waiver under the Plans.

Karen's argument that the Separation Agreement is a valid spousal waiver pursuant to the terms of the Plans is unavailing. Each plan required Joanne to consent in writing to a beneficiary other than herself. (*See* Compl. ¶¶ 38, 43.) Karen's position that the Separation Agreement is

---

[8] Karen quotes relevant portions of the Plans in the Complaint and AWWC does not dispute Karen's quoted language. The Court, accordingly, relies on Karen's recitation of the relevant language from the Plans in light of the parties failing to submit the documents related to the Plans.

such consent conflates two issues: (1) Joanne's waiver of any rights in the benefits under the Plans; and (2) Joanne's consent to another beneficiary. The former and latter are simply not the same. Even if the Separation Agreement was a valid waiver of Joanne's rights to any benefits under the Plans, and it appears it is a valid waiver, the Separation Agreement fails to identify that another beneficiary, other than Joanne, will receive the benefits of the Plans. As a result, the Separation Agreement cannot be construed to be the required "consent to such designation" of another beneficiary as required by the Plans. For this reason alone, the Separation Agreement cannot operate as a valid waiver under the terms of the Plans.

The precedent Karen cites for the proposition that a general waiver of rights in a divorce agreement is a sufficient waiver of rights, pursuant to Section 1055, despite the former spouse failing to remove her or his ex-spouse as a beneficiary has been abrogated by the Supreme Court's holding in *Kennedy*. The *Kennedy* Court foreclosed any inquiry into the parties' intent, desires, and the meaning and enforceability of purported waivers. *Kennedy*, 555 U.S. at 301. The Separation Agreement bears no indicia that Joanne "acknowledged the effect of" or consented to Paul's later attempt at designating Karen as the beneficiary. Instead, the Separation Agreement merely states that Joanne waived her rights to the benefits.

In sum, the Court finds that AWWC has met its burden of showing that Karen has failed to state a claim against it because the Separation Agreement does not meet the requirement of a valid waiver under the terms of the Pension Plan or the Savings Plan, nor does the Separation Agreement meet the requirements of Section 1055. The Court further finds that Karen cannot cure the deficiencies that resulted in dismissal of Counts One and Two, and amendment would be futile. Counts One and Two, accordingly, are dismissed with prejudice. *See Phillips*, 515 F.3d at 236.

B.  **The Court Declines to Exercise Supplemental Jurisdiction Over Count Three**

Karen alleges that the Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. (Compl. ¶¶ 3, 4.) As a result of the dismissal of Counts One and Two, Count Three is the only remaining claim. Count Three, unlike Counts One and Two, appears to be pled independent of any statutory duty imposed by ERISA and is based on a breach of the Separation Agreement, not a breach of the Pension Plan or the Savings Plan. (*Id.* ¶¶ 46-49.) The Court, accordingly, construes Count Three as a common-law breach of contract claim. (*Id.*)

When a district court has dismissed all claims over which it had original jurisdiction, the district court has the discretion to decline to exercise jurisdiction over the remaining state law claim. *See* 28 U.S.C. § 1367(c) ("The [Court] may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . . the district court has dismissed all claims over which it has original jurisdiction[.]"). The Third Circuit has advised that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis added) (citations omitted).

Here, the Court finds considerations of judicial economy, convenience, and fairness to the parties do not justify the exercise of supplemental jurisdiction. As discussed, the single remaining count is a breach of contract claim against Joanne. Thus, the matter can proceed in the appropriate New Jersey state court. While Karen chose to file her Complaint in federal court, there is no indication that this matter cannot proceed elsewhere or that it would be inconvenient to do so. Joanne appears to agree with such a result, in principle, as she argued that in the event the Court dismisses Counts One and Two, "the remaining issues are State family law and contract issues

which should be remanded to State Court."[9] (Joanne's Moving Br. 4.) The Court, accordingly, declines to exercise supplemental jurisdiction over Count Three and does not address the merits of Joanne's Motion to Dismiss.

## IV. CONCLUSION

For the reasons set forth above, the Court dismisses Counts One and Two with prejudice. The Court dismisses Count Three without prejudice. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[9] Joanne's argument in support of remand is inappropriate because the Court cannot remand a matter to state court when it was originally filed in federal court.

13